# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ANTHONY BLESKE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> DAUBERT LAW FIRM, LLC, PALISADES ACQUISITION XVI, LLC, and ASTA FUNDING, INC.; <br><br> Defendants. | Case No.: 17-cv-1107 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Anthony Bleske is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act in that he engaged in a consumer transaction. Wis. Stat. § 421.301(17).

6. Defendant Daubert Law Firm, LLC ("Daubert") is a law firm with its principal place of business located at 1 Corporate Drive, Suite 400, Wausau, WI 54402.

7. Daubert is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Daubert is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Daubert is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

9. Defendant Palisades Acquisition XVI, LLC ("Palisades XVI") is a foreign corporation with its principal place of business located at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

10. Palisades XVI is engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them.

11. Defendant Asta Funding, Inc. ("Asta") is a publicly-traded, Delaware corporation with its primary place of business at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632.

12. Palisades XVI is a wholly-owned subsidiary of Asta.

13. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

2

14. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

15. Palisades XVI and Asta are both "merchants" as defined in the WCA, as they claim to have taken assignment of the judgment against plaintiff, originally owed to Platinum Financial Services. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

16. The WCA's debt collection chapter applies to all persons collecting consumer debts, including those collecting debts owed to themselves. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

17. Palisades XVI has engaged third party debt collectors and attorneys, including Daubert, to collect allegedly defaulted debts that have been assigned to them.

18. A company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-05 (3rd Cir. 2000).

19. Asta and its subsidiary Palisades XVI are liable, both directly and indirectly, for Daubert's violations of Wisconsin law arising from actions taken on Asta's and Palisades XVI's behalf.

3

# FACTS

20. On or about February 28, 2002 Plaintiff was sued by an entity called "Platinum Financial Services," ("Platinum") in Milwaukee County, Circuit Court Case No. 2002sc6626 ("the state court action").

21. The alleged debt at issue in the state court action was an alleged credit card debt incurred for personal, family, or household purposes. Plaintiff has not opened any credit card accounts for any purpose other than purchases of household goods and services.

22. The Wisconsin Circuit Court Access ("CCAP") report for the state court action indicates that Platinum's address at the time of filing the state court action was "702 King Farm Blvd, Rockville, MD 20850."

23. According to the Maryland Secretary of State's "business entity search" website, an entity named "Platinum Financial Services Corporation" was located at 702 King Farm Blvd, Rockville, Maryland 20850, at the time of filing the state court action.

24. Upon information and belief, Platinum and the entity described in the previous paragraph were one and the same.

25. Plaintiff was never served a summons for the state court action.

26. The CCAP docket for the state court action does not include a reference to Platinum ever filing of an affidavit of service.

27. The CCAP docket also indicates that Platinum never served Plaintiff by publication. Wis. Stat. § 799.12 requires either personal service or mailing *and* publication.

28. The judgment is therefore void for insufficient service of process.

29. Nevertheless, on May 2, 2002, Platinum was granted default judgment, without Plaintiff's knowledge, in the state court action in the amount of $2,384.00.

30. Platinum never attempted to collect the judgment.

31. Plaintiff was not served with notice of entry of the judgment. In fact, Platinum never filed a notice of entry of judgment.

32. Approximately *fifteen* years later, on or about April 21, 2017, Daubert mailed a letter to Plaintiff in attempt to collect a debt owed to Palisades XVI, which purported to be the debt at issue in the state court action. A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

33. Plaintiff was confused by <u>Exhibit A</u>. After receiving the April 21, 2017 letter, Plaintiff contacted Daubert to inquire about the alleged debt.

34. In response to Plaintiff's inquires, Daubert mailed Plaintiff some documents, one purporting to be a "Notice of Assignment of Judgment." A copy of this notice is attached to this complaint as <u>Exhibit B</u>.

35. Enclosed with the Notice of Assignment of Judgment was a signed affidavit, dated April 25, 2017, by "Marie Smikle," an alleged authorized representative of the dissolved Platinum Financial Services, which stated that the state court judgment "is hereby assigned to PALISADES ACQUISITION XVI, LLC…." A copy of this affidavit is attached to this complaint as <u>Exhibit C</u>.

36. The affidavit is false. At the time <u>Exhibit C</u> was signed, Platinum Financial Services had been administratively dissolved for over seven years.

37. Moreover, documents provided by Daubert to Plaintiff show that <u>Exhibit B</u> was not a valid assignment of the Platinum judgment to Palisades XVI at any time, as <u>Exhibit C</u> claims occurred on April 25, 2017.

38. Platinum was administratively dissolved on March 25, 2009. *State of Maryland Business Entity Search*, http://tinyurl.com/ycko4apx (visited August 9, 2017). A copy of the Articles of Dissolution filed in the state of Maryland is attached as Exhibit D.

39. Upon information and belief, "Marie Smikle," if a real person at all, was not an authorized representative of Platinum on the date Exhibit C was executed. As stated above, Platinum had been dissolved in 2009 and had no authorized representative in 2017. Exhibit D.

40. Additionally enclosed with the Notice of Assignment of Judgment that Daubert mailed to Plaintiff were various documents that purport to be "Bills of Sale" and "Assignments of Judgment." A copy of these documents, collectively, is attached as Exhibit E.

41. The Bills of Sale in Exhibit E contradict "Marie Smikle's" affidavit (Exhibit C). Of the documents included in Exhibit E, the earliest records of any assignment of judgment from any party to any other party are a Bill of Sale and Assignment of Judgment, both dated March 5, 2007 (March 2007 documents).

42. The documents in Exhibit E do not show that Plaintiff's alleged debt was assigned to Palisades XVI.

43. The March 2007 documents purport to record the transfer of an unspecified portfolio of accounts and judgments from "Great Seneca Financial Corporation" ("Great Seneca") to "Palisades Acquisition XV, LLC."

44. Other documents included in Exhibit E record the assignment of an unspecified portfolio of accounts and judgments from "Palisades Acquisition XV, LLC" to Palisades XVI, also on March 5, 2007.

45. Even assuming, *arguendo*, that Plaintiff's alleged debt is included in the assigned portfolio, none of the documents in Exhibit E indicate any prior assignment of judgment from

6

Platinum to Great Seneca Financial Corporation or any to other entity. There is an entirely unexplained gap of five years between 2002 and 2007, and no evidence that Plaintiff's alleged debt was ever assigned to Great Seneca.

46. Moreover, Exhibits C and E cannot both be correct. The judgment could not have been "hereby assigned" from Platinum to Palisades XVI on April 25, 2017, *and* also have been assigned from Platinum to Great Seneca on March 5, 2007. Either both are wrong or one or the other is false.

47. Plaintiff was further confused by Exhibits B through E.

48. On or around June 28, 2017, Daubert arranged for a Notice of Entry of Judgment to be entered in the state court action, and Defendant Palisades XVI was added as the assigned creditor. A copy of this notice is attached to this complaint as Exhibit F.

49. On July 26, 2017, Defendant Daubert filed an Earnings Garnishment Notice in the state court action. A copy of this notice is attached to this complaint as Exhibit G.

50. Exhibit G seeks $6,844.04. This amount is almost three times the original amount of the judgment.

51. As the judgment is void, the garnishment notice is both an attempt to collect a debt that is not owed and an abusive practice.

52. Moreover, since the judgment is void, Wisconsin's six-year statute of limitations for actions on contract applies, and has long expired.

53. Under Wisconsin law, the expiration of the statute of limitations extinguishes the debt. Wis. Stat. § 893.05 ("**Relation of statute of limitations to right and remedy.** When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy.").

54. Even if Defendant Palisades XVI had a valid assignment of judgment, Defendants would still be barred by the doctrine of laches from collecting the alleged debt. *See Schafer v. Wegner*, 78 Wis. 2d 127, 254 N.W.2d 193 (1977) (The defendant was prejudiced by an unreasonable 16-year delay in bringing suit; thus laches barred suit even though the applicable limitation period did not.).

55. Daubert and Palisades XVI have recently been sued for the same conduct: attempting to collect on judgments purportedly assigned from Platinum Financial Services to Palisades XVI, supported by false affidavits of alleged authorized representatives of Platinum Financial services signed long after the dissolution of the corporation. *Scott Janiszewski v. Palisades Acquisitions XVI, LLC, et al.*, No. 17-cv-108-JPS (E.D. Wis., *filed* Jan. 23, 2017).

56. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems

important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

57. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

58. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of—the character, amount, or legal status of any debt."

60. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

9

62. 15 U.S.C. § 1692f(1) specifically prohibits "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

63. 15 U.S.C. § 1692g(a)(1) requires that the debt collector provide an accurate statement of "the amount of the debt" in the first written communication to the consumer.

64. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

65. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

66. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

67. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

68. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

69. The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

70. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

71. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

72. The WCA specifically allows a person to recover punitive damages "in appropriate cases." Wis. Stat. § 425.301(1); *Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168, 2014 U.S. Dist. LEXIS 6750*10 (E.D. Wis. Jan. 17, 2014).

73. Wis. Stat. § 427.104(1)(h) prohibits: "Engag[ing] in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

74. Wis. Stat. § 427.104(1)(j) prohibits "Claim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – FDCPA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Count I is brought against defendant Daubert.

77. The April 21, 2017 letter sent to Plaintiff by Daubert (Exhibit A) attempts to collect a debt that does not exist.

78. The efforts undertaken by Daubert to garnish Plaintiff's earnings are an attempt to collect a debt that does not exist.

79. Daubert's attempt to collect a void judgment is also an unfair practice.

80. Daubert violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, 1692f(1) and 1692g(a).

## COUNT II – WCA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count II is brought against all Defendants.

83. The April 21, 2017 letter that Daubert sent to Plaintiff on behalf of Palisades XVI, Exhibit A, claims a right with knowledge that the right does not exist.

84. The April 21, 2017 letter that Daubert sent to Plaintiff on behalf of Palisades XVI, Exhibit A, a fifteen-year-old, void default judgment, could reasonably be expected to harass Plaintiff.

85. The efforts undertaken by Daubert and Palisades XVI to garnish Plaintiff's earnings claim a right with knowledge that the right does not exist.

86. The efforts undertaken by Daubert and Palisades XVI to garnish Plaintiff's earnings could reasonably be expected to harass Plaintiff.

87. Defendants violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(j).

88. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting the fraudulent collection of void judgments in the future.

89. Plaintiff and all Class members also seek punitive damages for defendants' outrageous conduct.

## CLASS ALLEGATIONS

90. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) from whom Daubert attempted to collect a debt (c) allegedly owed to Palisades XVI or Asta, (d) in which default judgment was entered in favor of "Platinum Financial Services" between January 1, 2001 and March 25, 2009, (e) and in which case Daubert initiated garnishment proceedings between March 26, 2009 and August 10, 2017 inclusive, (f) and which garnishment proceedings remained active or open at any time on or after August 10, 2016, (g) which garnishment proceedings were supported by an alleged assignment of judgment from "Platinum Financial Services" to Palisades XVI (h) and also supported by an affidavit claiming to be from a "authorized representative" of Platinum Financial Services, (i) which assignment or affidavit was executed after the dissolution of Platinum Financial Services Corporation. Excluded from the class are 1) individuals who obtained the underlying debt exclusively for business purposes; 2) individuals who voluntarily made one or more payments on the individual's alleged debt on or after August 10, 2013; 3) individuals who were debtors in a

13

bankruptcy proceeding on or after August 10, 2011, 4) employees and first-degree relatives of employees of defendants; and 5) the judge(s) assigned to this action.

91. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

92. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants' efforts to collect on an invalid judgment based upon a false assignment of judgment and fraudulent affidavit are in violation of the FDCPA and/or the WCA.

93. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) punitive damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: August 10, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com